UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
UNITED STATES OF AMERICA,        :
                                  :
                                  :
v.                                :    **MEMORANDUM & ORDER**
                                  :    20-CR-206 (WFK)
                                  :
ROBERT CRUZ,                      :
                                  :
            Defendant.            :
---------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

Defendant Robert Cruz ("Defendant") is charged in a single-count Indictment with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Before the Court is Defendant's motion to suppress physical and statement evidence. *See* Def. Mot., ECF No. 33. For the following reasons, the Court DENIES the motion.

## BACKGROUND

On June 11, 2020, the Government filed a single-count Indictment charging Defendant with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Indictment, ECF No. 6. As alleged in the Indictment, on or about March 18, 2020, Defendant knowingly and intentionally possessed a .38 caliber Smith & Wesson revolver, having previously been convicted of one or more crimes punishable by a term of imprisonment exceeding one year. *Id.* ¶ 1. The Indictment also contains a criminal forfeiture allegation. *Id.* ¶ 2.

On March 14, 2022, Defendant moved, pursuant to Fed. R. Crim. P. 12(b)(3), to suppress physical and statement evidence under the Fourth and Fifth Amendments to the United States Constitution, *Miranda v. Arizona*, 384 U.S. 436 (1966) and its progeny, and 18 U.S.C. § 3501. Def. Mot. at 1. On April 18, 2022, the Government filed a memorandum in opposition to

Defendant's motion. Gov't Opp., ECF No. 36. On May 2, 2022, Defendant filed a reply in further support of the motion. Def. Reply, ECF No. 37.

On July 28, 2022, the Court held a suppression hearing during which it received evidence, including testimony from New York City Police Department ("NYPD") Officer Anthony Varrone and Sergeant Michael Amello. *See generally* July 28, 2022 Hr'g Transcript ("Tr.").

At the hearing, the Court received the following exhibits: (1) a photo of the motorcycle Defendant was operating, GX-1; (2) a map of East New York, GX-2; (3) surveillance video footage from a gas station, GX-3; (4) footage from Officer Varrone's body worn camera, GX-4; (5) footage from Sergeant Amello's body worn camera, GX-5; (6) the firearm recovered from Defendant, GX-6; (7) the fanny pack recovered from Defendant, GX-7; (8) a photograph of the firearm and ammunition recovered from Defendant, GX-8; and (9) a photograph of the firearm in the fanny pack recovered from Defendant, GX-9.

On August 18, 2022, the parties filed post-hearing briefing. *See* Def. Post-Hr'g Mem., ECF No. 46; Gov't Post-Hr'g Mem., ECF No. 45.

## FINDINGS OF FACT

On a motion to suppress, the defendant bears the initial burden to establish he was subjected to a warrantless search or seizure. *United States v. Herron*, 18 F. Supp. 3d 214, 221 (E.D.N.Y. 2014) (Garaufis, J.) (citing *United States v. Arboleda*, 633 F.2d 985, 989 (2d Cir. 1980)). The burden then shifts to the Government "to demonstrate by a preponderance of the evidence[] that the search or seizure did not violate the Fourth Amendment." *Id.* (citations

omitted). The testimony and evidence admitted at the suppression hearing established the following facts by a preponderance of the evidence.[1]

## I.  Background of the Testifying Officers

Officer Anthony Varrone has worked as a police officer with the NYPD for six and one-half years and has been assigned to the 75th Precinct for approximately six years. Tr. at 6. The 75th Precinct covers East New York and Cypress Hills. *Id.* On March 18, 2020, Officer Varrone was assigned to the "Response Auto" group, which is responsible for addressing quality-of-life crimes, crimes in progress, and moving violations. *Id.* at 7.

Sergeant Michael Amello has worked for the NYPD for over eleven years, and was an NYPD Officer at the time of the events on March 18, 2020. Tr. at 62.

## II.  The Events of March 18, 2020

On March 18, 2020, at approximately 6:20 P.M., NYPD Sergeant Barhold and Officers Varrone and Amello were in uniform and patrolling the area near the Cypress Hills housing complex in Brooklyn, New York in an unmarked vehicle. Padden Decl. ¶ 4, ECF No. 33; Gov't Opp. at 2; Tr. at 8–9. The unmarked police car was equipped with emergency lights, a siren, and tinted windows. Tr. at 40–41, 56. Sergeant Barhold was driving the car, Officer Varrone was in the front passenger seat, and Sergeant Amello was seated in the rear-left passenger seat. Tr. at 8–9. While driving westbound on Sutter Avenue, Officer Varrone observed, from approximately 35 feet away, Defendant driving a white motorcycle in a "slightly reckless" manner and without a license plate. Tr. at 12, GX-1. Officer Varrone observed Defendant disregard a red light at Sutter Avenue and Fountain Avenue, and illegally pass vehicles on the left. Tr. at 11–12. The

---

[1] Where the Court has cited testimony, it has credited that testimony, following consideration of the witness's demeanor, competence, experience, and consistency with other testimony and physical evidence.

3

officers then decided to follow Defendant and to stop him if they were able to safely do so. Tr. at 15. The officers first observed Defendant at a point on Sutter Avenue between Doscher Street and Crystal Street, and followed Defendant heading west on Sutter Avenue for two or three blocks and then north on Logan Avenue approaching Atlantic Avenue for approximately seven blocks, up to the intersection of Logan Street and Atlantic Avenue. Tr. at 15, 17–18. Officer Varrone testified he was concerned Defendant would flee on his motorcycle. *Id.*

Defendant was the first motorist in a line of vehicles stopped at the intersection of Logan Street and Atlantic Avenue at a red light. The officers drove past the line of cars, and pulled up to the left side of Defendant on his motorcycle. GX-3 at 06:25:43–06:25:49. The officers angled the police car so it blocked Defendant's path. *Id.* As the police pulled their vehicle in front of Defendant, Officer Varrone opened the front passenger-side door to further block Defendant's path and stepped out of the car. *Id.*; Tr. at 21. Defendant attempted to maneuver his motorcycle around the police car. Tr. at 21; GX-3 at 06:25:48–6:25:50. Officer Varrone grasped Defendant by the jacket to prevent him from driving away, and Defendant then revved the motorcycle's engine in an attempt to drive past the police car.[2] Tr. at 21; GX-3 at 06:25:48–6:25:50. Because Officer Varrone was holding onto Defendant while Defendant attempted to drive away on his motorcycle, the motorcycle tipped onto its side and Defendant fell to the ground. GX-3 at 06:25:50–06:25:52; Tr. at 22, 87–88.

Sergeant Amello, who had been seated in the rear driver-side passenger seat, ran from the opposite side of the police vehicle and held Defendant, who had fallen onto his right side, to the ground. GX-3 at 06:25:50–06:25:52. Sergeant Amello then dragged Defendant away from the motorcycle. GX-3 at 06:25:52–06:25:56; Tr. at 74–75. Sergeant Barhold also ran out of the car,

---

[2] In the process, Officer Varrone suffered a burn to his leg from the motorcycle's wheel. Tr. at 25.

4

held Defendant onto the ground, struck Defendant in the chest, and kicked Defendant. Tr. at 27; GX-3 at 06:25:26–06:26:12. The officers fought with Defendant for approximately thirty-five seconds before securing handcuffs on both of Defendant's hands. Tr. at 26–27; GX-3 at 06:25:52–06:26:29; GX-4 at 18:25:49–18:26:21. During this interaction, the officers used profane insults, calling Defendant a "piece of shit," "fucking cocksucker," "fucking asshole," and "fucking jerk off." GX-4 at 18:26:05–18:26:28. The officers then searched Defendant's person, including his pockets, pants, and his shoes, and during the search turned Defendant from laying on his right side to his left side. Tr. at 78; GX-4 at 18:27:18–18:27:20. Officer Varrone and Sergeant Amello testified it is standard procedure to search an arrestee's person immediately after arrest to ensure the safety of all present. Tr. at 76. Sergeant Amello felt a heavy, L-shaped object under Defendant's jacket, unzipped the jacket, and saw a fanny pack. Tr. at 79. Sergeant Amello testified in his experience in making firearm arrests that a fanny pack is a common way to carry a firearm. *Id.* As Sergeant Amello felt through the jacket and unzipped it to find a fanny pack, he asked Defendant, "What's in there," to which Defendant responded, "A gun. I got a gun." Sergeant Amello then asked, "Where's the gun at," to which Defendant responded, "It's right there." Tr. at 80; GX-5 at 18:27:42–18:27:53. The officers then located the gun inside the fanny pack strapped across Defendant's chest.

## DISCUSSION

Defendant argues (1) physical and statement evidence acquired by law enforcement officers during and after the warrantless search and seizure of Defendant should be suppressed under the Fourth Amendment; and (2) Defendant's statement that he had a gun should be suppressed under the Fifth Amendment. The Court addresses each argument in turn.

**I.     The Stop**

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Warrantless searches are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). "The *Terry* investigative stop and frisk is one such exception." *United States v. Weaver*, 9 F.4th 129, 138 (2d Cir. 2021) (citing *Terry v. Ohio,* 392 U.S. 1 (1968)). A *Terry* stop is a "brief investigatory stop[] of persons or vehicles that fall[s] short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "Because the balance between the public interest and the individual's right to personal security tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot." *Id.* (internal citations and quotations omitted).

"[T]he reasonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop." *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009); *see also United States v. Jenkins*, 452 F.3d 207, 212 (2d Cir. 2006) ("We find no error in the District Court's determination that the initial basis for the stop of the SUV was valid because the officers reasonably believed that the SUV lacked license plates, which would have been a violation of VTL [Vehicle and Traffic Law] § 402(1)(a)."). Furthermore, "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender," even without a warrant. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Here, law enforcement had probable cause to stop and arrest

6

Defendant without a warrant because they observed Defendant violate the traffic laws by operating the motorcycle without a license displayed. Whether the officers in fact witnessed Defendant disregard a red light is thus of no moment because the lack of the license plate on the motorcycle alone provided sufficient probable cause for arrest.

Officer Varrone's seizure of Defendant by grabbing Defendant's jacket to prevent him from driving away on the motorcycle was also permissible in effectuating the stop and arrest of Defendant. *See United States v. Hagood*, No. 20 Cr. 656, 2021 WL 2982026, at *17 (S.D.N.Y. July 15, 2021) (Engelmayer, J.) ("Even where handcuffs are not justified, to ensure safety or prevent flight, an officer may use his hands to restrain the subject of the stop.") (citing *United States v. Vasquez*, 638 F.2d 507, 523 (2d Cir. 1980))

A search incident to an arrest is also a "specific exception" to the Fourth Amendment's warrant requirement. *United States v. Diaz*, 854 F.3d 197, 205 (2d Cir. 2017) (citing *Riley v. California*, 573 U.S. 373, 382 (2014)). "It makes no difference whether the search occurs before or after the arrest, so long as [the search] is 'substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest'." *Id.* (quoting *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980)). This exception to the warrant requirement serves to "protect[] arresting officers and [to] safeguard[] any evidence of the offense of arrest that an arrestee might conceal or destroy," and these interests are not evaluated case-by-case but rather are assumed to be present whenever an arrest is justified. *Id.* (quoting *Arizona v. Gant*, 556 U.S. 332, 339 (2009)).

The search in this case was clearly incident to the officers' arrest of Defendant. Sergeant Amello felt a large, heavy L-shaped object under Defendant's jacket and discovered a firearm in Defendant's fanny pack. Indeed, promoting the safety of the officers by the discovery of a

dangerous weapon, such as the firearm in this case, is one of the specific reasons for the search incident to arrest exception to the warrant requirement. *See Gant*, 556 U.S. at 339.

Defendant argues suppression of the firearm is nonetheless appropriate because the officers allegedly used excessive force in effectuating the stop, arrest, and search. However, the merits of any excessive force allegations aside,[3] suppression is only appropriate when a Fourth Amendment violation is the but-for cause of the discovery and recovery of evidence, which was not the case here. *See Hudson v. Michigan*, 547 U.S. 586, 592 (2006) (establishing but-for causality as a necessary condition for suppression); *see also United States v. Ramirez*, 523 U.S. 65, 71 (1998) ("Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression."). The firearm was discovered during the search of Defendant immediately following his arrest. The methods by which the officers effectuated the stop and arrest were not the but-for cause of the discovery of the firearm in this case. Indeed, the firearm was recovered in the search which immediately *followed* the arrest and comported with the officers' standard procedure to search every arrestee incident to arrest. The evidence was lawfully recovered during the stop and search of Defendant, and therefore suppression is not appropriate.

## II.     Statements Made Subsequent to the Arrest

---

[3] Furthermore, while the Second Circuit has not squarely ruled on the issue, appellate courts considering the issue of whether suppression is an appropriate remedy where law enforcement officers use excessive force while effectuating an otherwise constitutional search have uniformly held that it is not. *See, e.g., United States v. Collins*, 714 F.3d 540, 543 (7th Cir. 2013); *United States v. Garcia-Hernandez*, 659 F.3d 108, 111–14 (1st Cir. 2011); *United States v. Watson*, 558 F.3d 702, 704-705 (7th Cir. 2009); *United States v. Morales*, 385 F. App'x 165, 167 (3d Cir. 2010). The appropriate avenue to vindicate an individual's claim that officers used excessive force is by way of a civil excessive force suit. *See id.* The Court notes Defendant has already filed such a civil action in federal court. *See* Def. Mot., Ex. B.

8

The Fifth Amendment requires law enforcement to advise an individual of certain rights prior to being subjected to a "custodial interrogation." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). A custodial interrogation occurs when authorities (1) interrogate a suspect and (2) conduct their interrogation while the suspect is "in custody." *United States v. FNU LNU*, 653 F.3d 144, 148 (2d Cir. 2011). An individual is "in custody" if, considering the totality of the circumstances, "a reasonable person in the suspect's position would have understood herself to be subjected to restraints comparable to those associated with a formal arrest." *Id.* at 153 (quotations omitted). This inquiry includes:

> the interrogation's duration; its location (e.g., at the suspect's home, in public, in a police station, or at the border); whether the suspect volunteered for the interview; whether the officers used restraints; whether weapons were present and especially whether they were drawn; [and] whether officers told the suspect he was free to leave or under suspicion.

*Id.* An "interrogation" includes express questioning of the suspect and its "functional equivalent[:] . . . words or actions on the part of law enforcement officers that the officers should know are reasonably likely to elicit an incriminating response for the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

"However, 'Miranda warnings need not precede questions reasonably prompted by a concern for the public safety or for the safety of the arresting officers.'" *United States v. Whitaker*, 827 F. App'x 39, 43 (2d Cir. 2020) (summary order) (quoting *United States v. Reyes*, 353 F.3d 148, 152 (2d Cir. 2003)); *see also New York v. Quarles*, 467 U.S. 649, 658–59 (1984). "The public safety exception is appropriate in situations where there is an objectively reasonable need to protect against danger given the totality of the circumstances." *Whitaker*, 827 F. App'x at 43 (citing *United States v. Estrada*, 430 F.3d 606, 612 (2d Cir. 2005)); *see also United States v. Newton*, 369 F.3d 659, 677-78 (2d Cir. 2004)( "The public safety exception to *Miranda* does

not depend upon the subjective motivation of the questioning officer") (quoting *Quarles*, 467 U.S. at 656). The public safety exception also permits broad questions without specific reference to weapons or dangerous objections, as "public safety questions are framed spontaneously in dangerous situations." *Newton*, 369 F.3d at 678.

Here, Defendant was in custody at the time he made the statement that he had a gun because he had been fully handcuffed and was being searched by Officer Varrone and Sergeant Amello. Sergeant Amello asked the Defendant about the contents of his fanny pack after Sergeant Amello had felt an L-shaped object, consistent with the shape of a firearm, through the exterior of Defendant's jacket and fanny pack. Sergeant Amello had an objectively reasonable basis for believing Defendant was carrying a gun, based on his plain feel of the exterior of the fanny pack and his understanding based on his experience that fanny packs are a common way to carry firearms. Therefore, his questioning regarding the contents of the fanny pack clearly falls within the public safety exception. *See Reyes*, 353 F.3d at 154.

Defendant argues the public safety exception does not apply because the police officers themselves created the public safety concern. Def. Reply at 3; Def. Post Hr'g Brief at 9–10. The Court is not persuaded. The concern for public safety was objectively reasonable when Sergeant Amello discerned Defendant was possibly carrying a firearm on his person. The officers were conducting the arrest at a busy intersection, and the presence of a firearm, which may have been—and in fact, was—loaded, presented an objectively reasonable safety concern for the officers, Defendant, and any bystanders. Defendant's statement was taken in response to questioning for the benefit of public safety, and Defendant's post-arrest statements in answer to Sergeant Amello's questioning therefore shall not be suppressed.

## CONCLUSION

For the foregoing reasons, the Court holds the physical evidence and Defendant's post-arrest statements were not seized or taken in violation of Defendant's rights and thus DENIES Defendant's motion to suppress in its entirety. The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 33.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: October 12, 2022
       Brooklyn, New York